### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| |
|---|
| PATRICIA J. LEE, |
| **Plaintiff,** |
| v. |
| JUDGE JANE GALLINA-MECCA, |
| **Defendant.** |

Civ. No. 21-20197 (KM) (JSA)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Patricia Lee, alleging various civil rights violations and instances of judicial misconduct, filed an action against Judge Jane Gallina-Mecca, the state Superior Court judge presiding over her divorce case. After Judge Gallina-Mecca failed to file a responsive pleading or appear in this federal case, the Clerk entered default against Defendant.

Now before the Court are Plaintiff's motion for default judgment and Defendant's cross motion to vacate the Clerk's entry of default and dismiss Plaintiff's complaint. For the reasons expressed below, the entry of default is **VACATED**, Plaintiff's motion for default judgment is **DENIED**, and Defendant's motion to dismiss is **GRANTED**.

## I.   BACKGROUND

On November 23, 2021, Plaintiff, *pro se*, filed the complaint in this action.[1] (DE 1.) The complaint is related to divorce proceedings between Plaintiff and her husband, Alan Chan, a case brought in the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, and presided over by Defendant Judge Gallina-Mecca. (*See* DE 1 ¶13, Ex. A, Ex. B.) Lee and Chan

---

[1]     As this Court previously noted (DE 6 n.1), the complaint was filed improperly by Plaintiff's sister as Plaintiff's "proxy." In light of Plaintiff's *pro se* status and her subsequent direct participation in the case, the Court will review the complaint as though properly signed and filed by Plaintiff in the first instance.

have two minor children over whom Plaintiff seeks custody. (DE 1 ¶29, Ex. A.) Judge Gallina-Mecca ordered that Mr. Chan have sole legal custody of the children and suspended Ms. Lee's parenting time with the children on November 12, 2021.

In her complaint, Ms. Lee claims that Judge Gallina Mecca's actions in overseeing the divorce case and awarding Chan custody over the children were "arbitrary and improper." She alleges that the defendant state judge proceeded in an unfair manner, revealed confidential medical information, ignored "irrefutable evidence and allegations that the minor children . . . are in extreme danger" and even suicidal, ignored "numerous police reports" concerning "the abusive father," and "cover[ed] up this abuse." (DE ¶¶15-21, 31.) Plaintiff also complains of the state judge's refusal to grant the Plaintiff a continuance on medical grounds when "life-threatening medical issues" requiring "bed rest" precluded Plaintiff's attendance in court. (DE 1 ¶¶22-40.) Plaintiff asserts several causes of action under 42 U.S.C. § 1983, alleging that by these and other related actions and omissions, Defendant violated her Fourth, Fifth, and Fourteenth Amendment rights while presiding over Plaintiff's divorce case. (DE 1 ¶¶41-60.) The Complaint seeks: 1) declaratory and injunctive relief that Defendant's custody order violates the Fourteenth Amendment to the U.S. Constitution, 2) an award of sole custody over the children to Plaintiff, 3) injunctive relief preventing Defendant from enforcing a contempt order against Plaintiff in the state court proceeding, and 4) compensatory and punitive damages. (DE 1 p.12.) Ms. Lee also suggests that this Court can and should recuse Judge Gallina-Mecca from presiding over what remains of the divorce case. (DE ¶7.)

On January 10, 2022, Plaintiff moved for an entry of default as to Defendant Gallina-Mecca. (DE 8.) On the same day, the Clerk entered default against Defendant, who at that time had failed to plead or otherwise defend in the case. On January 21, 2022, Defendant requested an adjournment of Plaintiff's default motion in order to investigate Plaintiff's allegations and to draft a response to Plaintiff's complaint. (DE 10). The Court granted the

2

extension, adjourning the return date of Plaintiff's default motion until February 22, 2022, and then again until March 7, 2022. On January 28, 2022, Plaintiff filed a motion for a final default judgment against Defendant for damages in the amount of $3 million. (DE 11.) On February 23, 2022, Defendant filed a response to Plaintiff's two default motions and cross-moved to vacate the default and dismiss Plaintiff's complaint with prejudice for lack of subject matter jurisdiction and for failure to state a claim (DE 13). On March 10, 2022, Plaintiff filed a brief opposing Defendant's cross motions. (DE 18.)

## II. DISCUSSION

### A. Motion to Vacate Default

Under Fed. R. Civ. P 55(c), a "court may set aside an entry of default for good cause[.]" To determine whether good cause exists, a district court must consider the following factors: "(1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a prima facie meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions." *Mrs. Ressler's Food Prods. v. KZY Logistics LLC*, 675 F. App'x 136, 139-40 (3d Cir. 2017). *See also Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Defaults are generally disfavored. *Mettle* v. *First Union Nat'l Bank*, 279 F. Supp. 2d 598, 601 (D.N.J. 2003) (citing *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1998)). Thus, "[a]ny doubt should be resolved in favor of the petition to set aside the [default] judgment so that cases may be decided on the merits." *Id.* (second alteration in original) (internal quotation marks omitted) (quoting *Medunic v. Lederer*, 533 F.2d 891, 894 (3d Cir.1976)).

While the Court considers all the factors enumerated in *Mrs. Ressler's Food Prod.,* an important threshold question arises from the second, "whether [defendant] has established a meritorious defense"; such a showing "is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *United States v. $55,518.05*

3

*in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (quoting *Tozer v. Charles A. Krause Mill. Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). In so doing, the defendant must "set forth with some specificity the grounds for [her] defense," so the court may determine its substantive merit. *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988). Importantly, "when considering a motion to vacate entry of default, the second factor is often considered to be the most important inquiry," and entry of default may be vacated because a defendant has persuasively proffered meritorious defenses. *Paris v. Pennsauken School Dist.*, No. 12-7355, 2013 WL 4047638, at *2 (D.N.J. 2013); *Mrs. Ressler's Food Prods.*, 675 Fed. App'x at 141 ("[I]f the defaulting defendant has advanced meritorious defenses ..., a default judgment may be vacated").

Here, Defendant argues that there are several valid defenses to Plaintiff's claims, including that 1) Defendant is immune from suit because she is entitled to sovereign immunity under the Eleventh Amendment, 2) Defendant is entitled to absolute judicial immunity, and 3) the Court lacks jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine. Any of these defenses, if meritorious, would preclude this Court from entering a judgment against the Defendant. In fact, two of these defenses would bar this Court from exercising subject-matter jurisdiction over Plaintiff's claims altogether.[2] Subject matter jurisdiction cannot be waived, whether by non-appearance or otherwise, and so the Court would be obligated to determine its jurisdiction *sua sponte* before it could enter default judgment anyway.[3]

---

[2]    Those defenses are discussed further in Section II.B, *infra.*

[3]    *See generally Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S. Ct. 568 (1977) (finding an issue to be waived, while noting that "[w] ere it in truth a contention that the District Court lacked jurisdiction, we would be obliged to consider it, even as we are obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction.") (citing *Liberty Mutual Ins. Co. v. Wetzel*, 424 U. S. 737, 424 U. S. 740 (1976); *Louisville & Nashville R. Co. v. Mottley*, 211 U. S. 149, 211 U. S. 152 (1908)); A necessary corollary is that the court can raise sua sponte subject-matter jurisdiction concerns." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003) (observing that "subject matter jurisdiction is non-waivable," and that courts have an "independent obligation to satisfy themselves" that it exists).

I briefly discuss the remaining three factors, which also weigh in favor vacating default. First, Plaintiff would not be prejudiced given the early stage of the proceeding. The time elapsed between Plaintiff's filing of the complaint and Defendant's filing of the motion to dismiss was just three months. Plaintiff "has not asserted loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982). On the third factor, while Defendant did not respond to the complaint timely, she did respond. There is no evidence of "willfulness" or "bad faith" that would support a finding that Defendant was "culpable" in her default.[4] *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1182 (3d Cir. 1984). Finally, since Plaintiff will not suffer prejudice and the Court has observed no evidence of bad faith on the part of Defendant, alternative sanctions are unnecessary and would be of no effect under the circumstances.

Because Defendant has advanced meritorious defenses, and the other factors do not operate to the contrary, the Court concludes that good cause exists, and the entry of default should be vacated.

## B. Motion to Dismiss

### 1. Subject Matter Jurisdiction

#### (a) Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure requires a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff generally has the burden of establishing that the court has subject matter jurisdiction. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009).

---

[4]     Judge Gallina-Mecca proffers that she did not intend the default, as this was an ordinary case of miscommunication within the state Attorney General's office. The contention has some plausibility, as a judge sued for official acts would not ordinarily be expected to retain counsel on her own. It is not necessary to make a factual finding, however; the point is that there is no evidence of purposeful misconduct. Indeed, it is difficult to imagine what a state judge could expect to gain by defaulting.

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may be brought as a facial or factual challenge. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). Where, as here, the motion challenges jurisdiction on the face of the complaint, the court considers only the allegations of the complaint and documents referred to therein, construing them in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). If the court cannot conclude, based on face of the complaint, that jurisdictional requirements are met, then the court must dismiss the complaint. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 633 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### (b) Analysis

Defendant contends that, as a state court judge, she is entitled to sovereign immunity and that therefore this Court lacks subject matter jurisdiction. I agree, but only to a point. While the Eleventh Amendment does grant Defendant sovereign immunity for most types of claims brought against her in her official capacity, it does not necessarily bar this Court from exercising subject matter jurisdiction over any and all claims brought against her.

The Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction" over actions against a State. *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013). The state's immunity from suit also extends to "arms" of the state, such as agencies or departments. *Id.* The Superior Court of New Jersey, as well as Superior Court judges like Defendant, are part of the judicial branch of the State of New Jersey and are thus protected by the Eleventh Amendment. *See Johnson v. State of New Jersey*, 869 F. Supp. 289, 296–98 (D.N.J. 1994); *see also Hunter v. Supreme Court of New Jersey*, 951 F. Supp. 1161, 1177 (D.N.J. 1996), *aff'd*, 118 F.3d 1575 (3d Cir. 1997).

There are three exceptions to Eleventh Amendment immunity: "(1) abrogation by an Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." *M.A. ex rel. E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 345 (3d Cir. 2003). Moreover, Eleventh Amendment immunity does not bar suits against state officials sued in their individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991) (holding state officials sued in their individual capacity are "persons" for purposes of § 1983); *Walker v. Beard*, 244 Fed. App'x. 439, 440 (3d Cir. 2007). Congressional abrogation does not apply here, because Congress did not abrogate states' sovereign immunity when it enacted 42 U.S.C. § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 58, 109 S. Ct. 2304, 2310 (1989); *Quern v. Jordan*, 440 U.S. 332, 339–346, 99 S. Ct. 1139, 1144–1148 (1979).[5] Waiver does not apply as it has not been raised by Plaintiff and does not appear in any of Defendant's submissions. There remain only two types of claims over which this Court may potentially exercise subject-matter jurisdiction: 1) a claim against Defendant for prospective relief to remedy an ongoing violation of federal law, or 2) a claim against Defendant in her individual capacity.[6]

A plaintiff may sue a state official, individually, for a constitutional violation under the legal fiction of *Ex parte Young* for prospective injunctive or declaratory relief. *Ex parte Young*, 209 U.S. 123, 159–60 (1908); *see Alden v. Maine*, 527 U.S. 706, 757 (1999). Such a claim must be against a state official for ongoing violations of federal law. *Wheeling & Lake Erie R. Co. v. Pub. Util. Comm'n of Com. of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998). To determine whether application of the *Ex parte Young* doctrine is appropriate, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an

---

[5]   "Moreover, it is well-established that '[t]he State of New Jersey has not waived its sovereign immunity with respect to § 1983 claims in federal court.'" *Rutkowitz v. Turner*, No. CV 17-6622 (FLW), 2018 WL 3388306, at *4 (D.N.J. July 12, 2018) (quoting *Mierzwa v. United States*, 282 F. App'x 973, 976 (3d Cir. 2008)).

[6]   I set aside judicial immunity, discussed *infra*.

ongoing violation of federal law and seeks relief properly characterized as prospective." *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). Here, a straightforward inquiry reveals that the complaint does not allege a violation that can be characterized as "ongoing." Although Plaintiff must live with the consequences of Defendant's orders and actions in the underlying state court case, Plaintiff is not complaining of present or future rulings. The relief Plaintiff seeks is retrospective: she seeks reversal of decisions and orders Defendant made in the past, and she seeks damages for injuries she allegedly suffered or is suffering as a result. *Ex parte Young* is therefore inapplicable.

Finally, the Court considers whether it has subject-matter jurisdiction over Plaintiff's claims against Defendant in her individual capacity, and as a threshold matter, *whether* any of her claims are against Defendant in her individual capacity. "In determining whether [a plaintiff has sued an official] in her personal capacity, official capacity, or both, [courts] … look to the complaints and the course of proceedings." *Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F. App'x 247, 251 (3d Cir. 2005). Plaintiff does not specify in the complaint whether her allegations are brought against Defendant in her individual capacity in addition to her official capacity. True, Plaintiff exclusively complains of actions taken by Defendant in her role as a judge, but as she points out in her opposition to the motion to dismiss, several of her allegations are phrased as being directed at the defendant as an individual acting "under cover of state law." (DE 18 at 14.) For purposes of asserting its subject matter jurisdiction, the Court will liberally construe the complaint as asserting individual-capacity claims.[7] I therefore move on to consider whether those claims state a cause of action.

---

[7]   Defendant also argues that this Court lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine, which prohibits a federal court from reviewing the final determinations of a state court. *Grey v. New Jersey*, 91 F. App'x 747, 749 (3d Cir. 2003) (citing *Dist. of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462, 482 (1983) (holding that a lower federal court "has no authority to

## 2. Failure to State a Claim

### (a) Legal Standard

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in Plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

---

review final judgments of a state court in judicial proceedings"); *Rooker* v. *Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) ("no court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment for errors"). Defendant is correct that, read narrowly, Plaintiff's complaint fits the mold of a textbook *Rooker-Feldman* case in that it presents a situation in which "1) the federal plaintiff lost in state court; 2) the plaintiff 'complains of injuries caused by state-court judgments'; 3) those judgments were rendered before the federal suit was filed; and 4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co.* v. *Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (internal quotations omitted). However, in light of Plaintiff's *pro se* status and her assertion that her allegations also pertain to Defendants' actions in Defendant's individual capacity, the Court will construe her complaint broadly and exercise subject matter so that it may determine whether Plaintiff states a claim in that limited context. Nonetheless, Defendant's point is well-taken that this is not the correct forum for Plaintiff to seek review of state court judgments. This Court has no power to vacate orders of a state court, it cannot compel a state judge to decide an issue in a particular way, and it cannot recuse a judge from a state court proceeding. The remedies Plaintiff seeks with respect to changing the outcome of her state court case exist exclusively within the state court system.

9

### (b) Analysis

To the extent that Plaintiff brings her claims against Defendant in her individual capacity, they are barred by absolute judicial immunity. Judges are generally absolutely immune from suit in both their individual and official capacities. *See Mireles v. Waco*, 502 U.S. 9, 9 (1991). The immunity is very broad. As the Supreme Court has held, a judge "will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of [her] authority ..." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978). Nor is immunity vitiated by "allegations of malice or corruption of motive." *Forrester v. White*, 484 U.S. 219, 227 (1988).

There are two exceptions to absolute judicial immunity: (1) "a judge is not immune from liability for nonjudicial actions," and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12. The defendant who seeks protection under the doctrine of judicial immunity has the "burden of showing that such an exemption is justified." *Montana v. Connor*, 817 F. Supp. 2d 440, 445 (D.N.J. 2011). With respect to the first inquiry, "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. This Court must "draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges," such as administrative or private acts. *Gallas v. Supreme Ct. of Pennsylvania*, 211 F.3d 760, 769 (3d Cir. 2000).

The first exception is inapplicable. All the allegations in the complaint pertain to conduct or rulings that Judge Gallina-Mecca undertook pursuant to her judicial authority. Plaintiff herself asserts that Defendant's alleged "improper actions" were ones she took "as the presiding judge in [Plaintiff"]s case," including 1) adjudicating certain issues without notifying Plaintiff, 2) making determinations regarding the transmission of sensitive medical

10

information, 3) choosing not to credit certain evidence submitted by Plaintiff, 4) declining to permit Plaintiff's sister to testify on Plaintiff's behalf, 5) declining to permit a certain medical professional to testify on Plaintiff's behalf, 6) issuing a contempt order against Plaintiff for failing to appear in court, 7) declining to allow Plaintiff's children to visit a psychiatrist, 8) issuing and enforcing a custody order in favor of the father of Plaintiff's children, and 9) engaging in *ex parte* communications with opposing counsel. (DE 1 ¶¶16-17, 20, 27, 30, 34, 46, 60). It is of no consequence that Plaintiff perceives Defendant's conduct as "hostile" and "retaliatory," or that she believes Defendant's actions amount to a "hit job" on behalf of the father of Plaintiff's children. (DE 1 ¶¶25, 36, 48). The courts' analysis, however, must focus "on the general nature of the challenged action, without inquiry into such 'specifics' as the judge's motive or the correctness of his or her decision." *Gallas,* 211 F.3d at 769; *see Mireles*, 502 U.S. at 13, 112 S.Ct. 286 ("[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, we look to the particular act's relation to a general function normally performed by a judge ....") Judge Gallina-Mecca's acts were judicial in nature and therefore qualify for absolute judicial immunity.

The second exception obviously does not apply either. Plaintiff does not contend that Defendant lacked all jurisdiction to preside over her case. Rather, Plaintiff complains of actions and omissions Defendant undertook while exercising her unquestioned jurisdiction as a judge of the Superior Court of New Jersey. To the extent Plaintiff argues that Defendant took unwarranted actions that were legally unfounded or beyond her power to perform, judicial immunity still applies. *See Stump v. Sparkman,* 435 U.S. at 356 n.6 (distinguishing between an act done in "excess of jurisdiction" and one done in "the clear absence of all jurisdiction over the subject-matter"); *Montana v. Connor*, 817 F. Supp. 2d 440, 446 (D.N.J. 2011) ("...[S]o long as the judge had general subject matter jurisdiction over the action, the act [in excess of jurisdiction] is not stripped of its judicial immunity.); *Gallas*, 211 F.3d at 769

11

("a judge does not act in the clear absence of all jurisdiction when the judge enters an order at least colorably within the jurisdiction of her court…). Even when drawing all inferences in Plaintiff's favor and accepting all the allegations as true, it is impossible to construe any of Defendant's alleged actions as taken in "clear absence of jurisdiction."

Because all of Plaintiff's allegations pertain to protected judicial acts, Plaintiff's claims are barred by the doctrine of absolute judicial immunity and must be dismissed under Fed. R. Civ. P. 12(b)(6).

## III.  CONCLUSION

For the reasons set forth above, the entry of default is **VACATED**, Plaintiff's motion for default judgment is **DENIED**, and Defendant's motion to dismiss is **GRANTED.**

An appropriate order follows.

Dated: September 19, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**

12